**No. 23-15399**

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Alexander Behrend,

Plaintiff–Appellant,

v.

San Francisco Zen Center, Inc.,

Defendant–Appellee.

On Appeal from a Final Judgment of the
United States District Court for the Northern District of California
Case No. 21-cv-1905, Hon. Jacqueline S. Corley

## REPLY BRIEF FOR APPELLANT

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

*Counsel for Appellant*

Dec. 8, 2023

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities ............................................................................. iii

Introduction ...................................................................................... 1

Argument .......................................................................................... 2

I.  Application of the ministerial exception is a question of law that this Court can answer, and it should do so in reference to guidance from the Supreme Court. ............................................... 2

II. The Zen Center's formulation of the ministerial exception includes few if any limits—as demonstrated by the facts it highlights about Appellant Behrend. ............................................... 7

III. Applying the Supreme Court's ministerial exception framework does not risk exposing religious entities to a flood of civil rights claims. ........................................................................ 12

Conclusion ....................................................................................... 16

Certificates ...................................................................................... 1a

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bostock v. Clayton County,*
140 S.Ct. 1731 (2020) .................................................................. 1, 7, 13

*Braidwood Mgmt. v. Equal Emp't Opportunity Comm'n,*
70 F.4th 914 (5th Cir. 2023) ................................................................. 13

*Ciraci v. J.M. Smucker Co.,*
62 F.4th 278 (6th Cir. 2023) ................................................................. 15

*DeWeese-Boyd v. Gordon Coll.,*
487 Mass. 31 (Mass. 2021), *cert. denied*, 142 S.Ct. 952 (2022) ........... 11

*Doe v. Catholic Relief Servs.,*
No. 28-2022 (Md. Aug. 14, 2023) .......................................................... 8

*Duquesne Univ. of Holy Spirit v. Nat'l Labor Relations Bd.,*
975 F.3d 13 (D.C. Cir. 2020) ................................................................. 4

*Fellowship of Christian Athletes v. Bd. of Educ.,*
__ F.4th __, No. 22-15827 (9th Cir. Sept. 13, 2023) (en banc) ............. 6

*Fitzgerald v. Roncalli High Sch.,*
73 F.4th 529 (7th Cir. 2023) ................................................................. 15

*Gordon Coll. v. DeWeese-Boyd,*
142 S.Ct. 952 (2022) ............................................................................ 11

*Herx v. Diocese of Fort Wayne-South Bend, Inc.,*
772 F.3d 1085 (7th Cir. 2014) .............................................................. 15

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. Equal Emp't Opportunity Comm'n,*
565 U.S. 171 (2012) ................................... 2, 3, 4, 5, 6, 7, 8, 12, 13

*Lashley v. Spartanburg Methodist Coll.,*
66 F.4th 168 (4th Cir. 2023) ................................................................. 16

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania,*
140 S.Ct. 2367 (2020) ............................................................................ 7

*Our Lady of Guadalupe School v. Morrissey-Berru,*
140 S.Ct. 2049 (2020) ................................................... 3, 5, 6, 7, 13

*Palmer v. Liberty Univ.,*
72 F.4th 52 (4th Cir. 2023) ................................................................... 16

*Puri v. Khalsa,*
844 F.3d 1152 (9th Cir. 2017) .............................................................. 12

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Rehfield v. Diocese of Joliet*,
  2021 IL 125656 (Ill. 2021) ...................................................................... 14

*Starkey v. Roman Catholic Archdiocese of Indiana*,
  41 F.4th 931 (7th Cir. 2022) ................................................................... 14

*Woods v. Seattle's Union Gospel Mission*,
  481 P.3d 1060 (Wash. 2021) ......................................................... 4, 8, 10

**Statutes**

42 U.S.C. § 2000e-1(a) .............................................................................. 14

**Other Authorities**

Ninth Circuit Instructions on Americans with Disabilities Act 12.1A-
  12.12, Ninth Circuit Committee on Model Civil Jury Instructions,
  Manual of Model Civil Jury Instruction for the District Courts of the
  Ninth Circuit (2017) ................................................................................ 14

# INTRODUCTION

The Opening and Response briefs serve to sharpen the question that this Court must answer: as a matter of law, construing all facts in Appellant Behrend's favor, has the Defendant-Appellee carried its burden to demonstrate that no reasonable juror could find that Appellant Behrend was anything other than minister of the San Francisco Zen Center? Appellant and Appellee agree that the Zen Center is a religious organization, agree that Appellant Behrend practiced Zen Buddhism, and even agree on the bottom-line formulation of the test that applies to answer the question of whether he served as a minister—although the Zen Center repeatedly dismisses key parts of the Supreme Court's guidance about how to apply that test in practice. But as even the Response Brief demonstrates, the answer to the legal question of whether Appellant Behrend was a minister is no.

Appellant Behrend makes a few points in reply: First, of course this Court can answer that question, and need not accept the Zen Center's circular insistence that because he is a minister, the Court cannot determine whether he is a minister. Second, and relatedly, the Zen Center's conception of an expansive ministerial exception that sweeps to include Appellant Behrend admits to few if any limits on who is a minister—untenably broad in light of *Hosanna-Tabor*, *Morrissey-Berru*, *Bostock*, and other precedent. As even the Zen Center's Response Brief makes clear, Appellant Behrend looks far more like a student than a

1

teacher, much less like someone playing a key role at the Zen Center. And third, this Court should note the limited nature of a possible reversal in this case—the ministerial exception is merely one defense religious institutions may rely upon in defending employment cases, and a necessarily limited one even compared to other defenses. And claims of discrimination on the basis of disability status, like Appellant Behrend's, sit further from the heartland of church autonomy doctrine than other types of employment discrimination claims.

## ARGUMENT

### I.   Application of the ministerial exception is a question of law that this Court can answer, and it should do so in reference to guidance from the Supreme Court.

The Zen Center makes two assertions about the nature of this Court's inquiry that bear some discussion. First, the Zen Center repeatedly suggests that this Court must accept the Zen Center's own assessment about who is and is not a minister—that the very idea of answering the question transgresses the First Amendment's free exercise clause. *See, e.g.*, Response Br. at 38 ("SFZC's own view of Appellant's religious duties as a WPA are of the utmost significance"). Second, to the extent that it conducts the inquiry at all, the Zen Center suggests that this Court should not look too closely at the factual circumstances discussed in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. Equal Emp't Opportunity Comm'n*, 565 U.S. 171 (2012), because such facts are not a

"checklist" or a "rigid formula." *See, e.g.*, Response Br. at 29. Both of these assertions depart from not only the Supreme Court's precedent, but the prevailing views of appellate courts to have considered ministerial exception cases since *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S.Ct. 2049 (2020).

First, application of the ministerial exception is a legal question that courts must answer in reference to the facts in the record, and the mere assertion of ministerial status by a religious defendant does not conclusively resolve the inquiry. *Hosanna-Tabor* and *Morrissey-Berru* themselves make this quite clear, if for no other reason than that both the *Hosanna-Tabor* Court and *Morrissey-Berru* Court conduct the ministerial exception analysis even after discussing the importance of the secular legal system not intruding too much in religious organizations' affairs. The citations supporting the Zen Center's assertions that "a court must yield broad deference to the religious organization in its characterization of its religious practices," Response Br. at 36, and that its "own view of Appellant's religious duties as a WPA are of the utmost significance," *id.* at 38, demonstrate this. The Zen Center cites both federal appellate precedent that predates the Supreme Court's discussion of the doctrine, and Justice Thomas's *Hosanna-Tabor* concurrence joined by no other Justice, which is not the law. *Id.* at 38-39 (quoting *Hosanna-Tabor*, 565 U.S. at 196 (Thomas, J., concurring)).

3

Besides the analyses in *Hosanna-Tabor* and *Morrissey-Berru* themselves, subsequent precedent across fora applying those cases only underscores that the application of the ministerial exception falls well within the ambit of the courts. "Whether an employee qualifies as a 'minister' is a legal question and the title a legal term." *Woods v. Seattle's Union Gospel Mission*, 481 P.3d 1060, 1070 (Wash. 2021) (quoting and discussing *Hosanna-Tabor*, 565 U.S. at 190). "[I]n [*Morrissey-Berru*], the Court signaled that there is no constitutional impediment to distinguishing employees who are at the heart of the religious mission from those who are not." *Duquesne Univ. of Holy Spirit v. Nat'l Labor Relations Bd.*, 975 F.3d 13, 17 (D.C. Cir. 2020) (Pillard, J., concurring in denial of rehearing) (internal quotations omitted).

The Zen Center's insistence that the Court should not independently consider the ministerial exception question perhaps owes to its wrongful conflation of "the question of what it means to practice" Zen Buddhism, Response Br. at 20, with the question actually at issue in this case: whether Appellant Behrend was a minister. Appellant of course agrees that the Court passing judgment on what is and is not Zen Buddhist practice would "risk[] substantial and impermissible government entanglement of religion," Response Br. at 20. The Zen Center can determine through whom and how it conveys its messages, the content and nature of its religious doctrine, and who fills key roles at its organization. *See* Response Br. at 30. But as Appellant explained in his

Opening Brief, he has never disputed that work practice at the Zen Center is part of the religious practice of Zen Buddhism, or even made an issue of the Zen Center's doctrine at all. Indeed, he came to his position there—and was devasted to lose it on account of his disability—*because* of his commitment to and practice of Zen Buddhism. This Court can and should take that all as a given. What is at issue, instead, is whether Appellant Behrend actually played a key role at the Zen Center. And this Court can and must make its own assessment of his ministerial status based on the record in front of it.

Second, in making that assessment, the Court should look to both the overall rule articulated by the Supreme Court, and the guidance about how to apply that rule that the Court offered in *Hosanna-Tabor* and underscored in *Morrissey-Berru*. Respecting the formulation of the ministerial exception, the Zen Center seems to agree that "[w]hat matters, at bottom, is what an employee does." *Morrissey-Berru*, 140 S.Ct. at 2057 (citing *Hosanna-Tabor*, 565 U.S. at 192.); *accord* Opening Br. at 1, 22; Response Br. at 2. But the Zen Center otherwise seems to reject the Supreme Court's guidance in two key ways. For one thing, it outright rejects the Court's discussion of the ministerial exception as one applying to "certain key roles," "certain important positions," and those holding "an important position of trust," such as those "preaching, teaching, and counseling," and "conveying the Church's message and

carrying out its mission." *Morrissey-Berru*, 140 S.Ct. at 2060, 2062, 2063.[1]
*See* Response Br. at 1, 19, 23, 24, 28 (rejecting the Supreme Court's
grounding of the ministerial exception in the importance of such key
roles). For another thing, the Zen Center dismisses the circumstances the
*Hosanna-Tabor* Court discussed in analyzing ministerial status as a
"checklist" or "rigid formula." Response Br, at 29, 30, 31. (Those relevant
facts included a person's title as a minister, *Hosanna-Tabor*, 565 U.S. at
190; a significant degree of religious training followed by a formal process
of commissioning, *id.* at 193; whether the person held herself out as a
minister, *id.* at 191; and the role the person played in conveying the
religions organization's message and carrying out its mission, *id.* at 191-
92.) Appellant agrees that no individual fact is or should be dispositive.
*See* Response Br. at 30 (suggesting Appellant believes otherwise). But the
Supreme Court's decisions look to those circumstances as they conduct
the ministerial exception analysis—this Court should, too.

---

[1] *See also Fellowship of Christian Athletes v. Bd. of Educ.*, __ F.4th __,
No. 22-15827, *80 (9th Cir. Sept. 13, 2023) (en banc) (Forrest, J.,
concurring) (quoting *Morrissey-Berru* to observe that "control over
religious leadership is vital because without it, a wayward minister's
preaching, teaching, and counseling could contradict the church's tenets
and lead the congregation away from the faith" and because "religious
expression and exercise can be manipulated or wholly undermined by
those directing the group's activity").

## II. The Zen Center's formulation of the ministerial exception includes few if any limits—as demonstrated by the facts it highlights about Appellant Behrend.

In *Hosanna-Tabor*, *Morrissey-Berru*, and other cases, the Supreme Court has explained that the ministerial exception cannot and does not sweep to include everyone employed by or connected to a religious organization. Appellant Behrend's Opening Brief discussed this in some detail. *See* Opening Br. at 23-24. Appellant noted that Justice Alito's specific contrast of a church's greater autonomy in decisions providing health care "to *all* its employees, from a minister to a building custodian," with the ministerial exception, which "extends only to *select* employees, having ministerial status," *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S.Ct. 2367, 2387 n.1 (2020) (Alito, J., concurring), presumes that the ministerial exception does not apply to every employee of a religious organization. Appellant also pointed to Justices Alito and Thomas dissenting in *Bostock*, criticizing the limits the outcome might place on religious employers because "even if teachers with [religious instruction] responsibilities qualify" for the ministerial exception, "what about other very visible school employees who may not qualify for the ministerial exception?" *Bostock v. Clayton County*, 140 S.Ct. 1731, 1781 (2020) (Alito, J., dissenting). At bottom, the Court has made clear that the ministerial exception applies to the limited class of employees in key roles, and at the very least, cannot apply to every employee of a religious institution, even though the religious institution

may ultimately depend upon the work of all its employees to fulfill its religious mission. *See Doe v. Catholic Relief Servs.*, No. 28-2022, at \*33-34 (Md. Aug. 14, 2023) (distinguishing between those with "duties directly furthering the core mission of a religious entity" and those who are "one or more steps removed from taking the actions that effect the goals of the entity"); *Woods*, 481 P.3d at 1072 (Yu, J., concurring) (observing that applying the ministerial exception based upon an employee "furthering [an organization's] religious mission" missed the point, because "the same is true of every [religious organization] employee").

The Zen Center's formulation of the ministerial exception and its proposed application of the exception to Appellant Behrend, by contrast, admits of no such limits. The Zen Center invokes the exception in reference to Appellant Behrend's "service to the Zen Center community," Response Br. at 14, repeatedly rejects the details considered by the *Hosanna-Tabor* Court as a "checklist" and "rigid formula" that the Court should disregard because they suggest that Appellant Behrend never played a key role, Response Br. at 29, 30, and insists that "there is also no condition limiting the ministerial exception to a leader," Response Br. at 38. Toward the end of its brief, the Zen Center finally and plainly asserts that of the circumstances discussed by the *Hosanna-Tabor* Court, it views "none [as] being necessary" to answer the question of whether Appellant Behrend was ever a minister. Response Br. at 55. Instead, the

Zen Center offers little more than circular reasoning as its proposed test, explaining its view that an individual "serves such a key role when their role implicates the fundamental purpose of the exception," Response Br. at 24. Particularly combined with the Zen Center's conflation of whether someone is practicing religion while working with whether someone plays a key role for a religious organization, Response Br. at 20, it's hard to imagine *any* employee at a religious organization whom the Zen Center would agree is not covered by the ministerial exception.

Indeed, the Zen Center's recitation of facts in this case demonstrates how broadly it views the ministerial exception as sweeping. The Zen Center repeatedly cites facts that it believes help its case, because they help demonstrate that Appellant Behrend practiced Zen Buddhism in his life and at his work. It notes that Appellant Behrend, like all work practice apprentices, studied Zen Buddhism, attended meditations, talks, and classes, and participated in religious ceremonies. Response Br. at 7. It explains that he spent "nearly all of his time as a WPA practicing and training in to Sōtō Zen Buddhism," Response Br. at 11, and that his attendance at meditations, services, lectures, and his cleaning work was "part of the religious practice," Response Br. at 13. It emphasizes that he "practiced the religion with the other residents," Response Br. at 14, and that it views "all of a Work Practice Apprentice's work practice time as an expression and practice of faith," Response Br. at 30-31. It says that the "labor of cooking, cleaning and so on—*within the context of Zen*

*Buddhist practice*—is indeed a Zen Buddhist expression of religious practice." Response Br. at 35 (emphasis in original). And it ultimately calls him a "sincere student of the Dharma." Response Br. at 40. All of that is true, and undisputed—but the ministerial exception is not about whether someone practiced a religion or studied it. *See Woods*, 481 P.3d at 1072 (Yu, J., concurring) ("there is a difference between being engaged in the ministry of a church and being a minister for purposes of the ministerial exception"). The exception is about whether that person played a key role for their religious organization. And none of those facts go to the question of whether Appellant Behrend played a key role at the Zen Center.

The Zen Center's determination to prove that Appellant Behrend practiced Zen Buddhism sidesteps the truth that the Zen Center obscures elsewhere. Virtually every time the Zen Center gets close to discussing Appellant Behrend's actual role and its stark differences from the many teaching and leadership roles at the Zen Center, it switches verb tenses and adopts the conditional, or a future tense. The Zen Center cannot say that Appellant Behrend was lay ordained or priest ordained; it says instead that he merely "expressed his interest to several other members of the community in spreading the word of the Buddha and becoming either lay or priest ordained," Response Br. at 14-15. The Zen Center cannot say that he was a priest, or that he even ever undertook training to become a priest; it says instead that he "voiced excitement about

becoming more involved in Zen Buddhism" and that he "intended to become a priest, and he stated his interest in spreading the Zen teachings" to others. Response Br. at 15. Left unsaid, of course, is that when he stated that interest, the Zen Center rejected him out of hand.

Relatedly, the Zen Center's suggestion that despite being a practitioner himself, Appellant misunderstands Eastern religions like Zen Buddhism, *see, e.g.*, Response Br. at 20, 30, 35, 46, is simply incorrect. The Zen Center warns that "all the case law deals with Western religions," Response Br. at 35, and it rejects as insignificant any "degree of resemblance to a traditionally Western, formalized ordination procedure," Response Br. at 46, because considering such formalized roles "privileges religions with easily recognizable formal organization, which impermissibly discriminates against religions that follow less formal—or Western—structures." Response Br. at 47.[2] But existing precedent is not incapable of application here. Formalized organization may not be required, but the Zen Center *does* have a multi-level org chart

---

[2] In explaining why it believes that Appellant insufficiently acknowledges Zen Buddhism's status as an Eastern religion, the Zen Center cites "*Gordon Coll. v. DeWeese-Boyd*, 142 S.Ct. 952, 954 (2022)," Response Br. at 47, without noting that its citation is to a statement respecting—and not dissenting from—the denial of certiorari. *Gordon Coll. v. DeWeese-Boyd*, 142 S.Ct. 952, 954 (2022) (Alito, J., respecting denial of certiorari). Notably, the underlying opinion that the Court declined to review rejected application of the ministerial exception to tenured professors at a religious college. *DeWeese-Boyd v. Gordon Coll.*, 487 Mass. 31, 37 (Mass. 2021), *cert. denied*, 142 S.Ct. 952 (2022).

with dozens of positions in a clear hierarchy—positions Appellant Behrend did not hold. *See* Doc. 64-11, at 6. Formalized training may not be required, but Zen Center *does* have specific procedures for lay or priest ordination—which Appellant Behrend never received. 1-ER-96; 1-ER-98. It has formalized procedures to train a head student to instruct others—and Appellant Behrend never did. 1-ER-124. It is not "*Appellant's* insistence on rigid training requirements to teach religion," Response Br. at 47 (emphasis added), that allowed the Zen Center to reject his request to pursue the training that it required priests and teachers to receive. Ultimately, the Zen Center's proof that Appellant Behrend *wanted* to become a minister only underscores that he never did become one, and never played a key role of any kind. Quite the opposite of having "held [him] out as a minister," *Hosanna-Tabor*, 565 U.S. at 191, the Zen Center specifically ensured that it would never do so.

## III. Applying the Supreme Court's ministerial exception framework does not risk exposing religious entities to a flood of civil rights claims.

The Zen Center warns the Court that if the ministerial exception does not apply to bar Appellant's claims, that would essentially force it to house and employ Appellant Behrend against its will, and in contravention of its autonomy as a religious institution. *See* Response Br. at 17. It cites this Court's pre-*Morrissey-Berru* decision in *Puri v. Khalsa*, 844 F.3d 1152 (9th Cir. 2017), which it explained that the ministerial

exception stops courts from "requiring a church to accept an unwanted minister, or punishing a church for failing to do so." Response Br. at 24-25 (quoting *Puri*, 844 F.3d at 1158). And it quotes both the District Court and *Hosanna-Tabor* in asserting that the First Amendment bars a court from interfering with "the protected decision of who acts as a minister within a church." Response Br. at 25. That warning presumes that Appellant Behrend had a ministerial role which fell within the exception—the question that this Court has to answer. But beyond that, the Zen Center overstates the mischief that would come from rejecting application of the ministerial exception to Appellant Behrend's role as primarily a cook and cleaner who was also a practicing Zen Buddhist.

There are two main reasons that this Court need not worry that this case would undercut religions organizations' ability to defend these types of suits. The first is that, as multiple courts have recognized even post *Morrissey-Berru*, religious organizations have numerous defenses available to them, and the ministerial exception is among the narrowest of those. As one opinion recently explained, there are "three potential avenues of legal recourse for religious and faith-based employers to shield themselves from any potential infringement of their religious rights," including not only the ministerial exception, but Title VII's religious exception, 42 U.S.C. § 2000e-1(a), and the Religious Freedom Restoration Act. *Braidwood Mgmt. v. Equal Emp't Opportunity Comm'n*, 70 F.4th 914, 918 (5th Cir. 2023) (citing *Bostock*, 140 S.Ct. at 1754). Regarding

13

those three avenues, a different post-*Morrissey-Berru* opinion expressed "concern[]" and criticized "what seems to have become the norm in cases of this kind: starting with a constitutional question under *Hosanna-Tabor* . . . rather than with [42 U.S.C. § 2000e-1(a)], which is the proper sequence." *Starkey v. Roman Catholic Archdiocese of Indiana*, 41 F.4th 931, 945 (7th Cir. 2022) (Easterbrook, J., concurring). Still a third court, discussing the ministerial exception, referred to it as "the narrower of the two first amendment doctrines" that a religious defendant could potentially rely on in that case. *Rehfield v. Diocese of Joliet*, 2021 IL 125656, 13 (Ill. 2021).

The second, relatedly, is that rejection of the ministerial exception would not resolve this case in Appellant's favor or eviscerate the Zen Center's defense of Appellant Behrend's claims. As noted in the Opening Brief, the Parties conducted discovery limited to the application of the ministerial exception, and the Zen Center sought judgment on that—and only that—basis. *See* Opening Br. at 15 (discussing procedural history). But the Zen Center did not assert only the ministerial defense; it asserted *sixteen* affirmative defenses. 1-ER-159-162; *see also, e.g.*, Ninth Circuit Instructions on Americans with Disabilities Act 12.1A-12.12, Ninth Circuit Committee on Model Civil Jury Instructions, Manual of Model Civil Jury Instruction for the District Courts of the Ninth Circuit (2017) (last updated Aug. 2023). Several of the affirmative defenses went to the heart of his ADA claim, *see* 1-ER-160 (asserting no obligation to engage

14

in interactive process; purportedly existing grant of an accommodation; and alleged failure of Appellant to propose a reasonable accommodation). The Zen Center can also simply defend the claim on its merits.

The nature of Appellant Behrend's claims and the Zen Center's asserted defenses also illustrate both the more limited reach of any potential holding in this case, and the distance of this case from the heartland of the church autonomy doctrine. Appellant Behrend brought claims under the ADA, *see* 1-ER-164. While religious organizations must have discretion to select their own ministers and people playing key roles in their organizations, no faiths—Eastern, Western, or any other—profess a faith-based belief in a need to discriminate on the basis of disability status. The heartland of the ministerial exception immunizes otherwise illegal discrimination that flows from religious doctrine, which generally justifies discrimination on the bases of religion, *e.g. Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 281 (6th Cir. 2023) ("the Catholic Church need not pick rabbis or imams to run its seminaries"), sex, *e.g. Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085, 1086 (7th Cir. 2014) (involving in vitro fertilization, contrary to religious defendant's faith), or sexual orientation, *e.g. Fitzgerald v. Roncalli High Sch.*, 73 F.4th 529, 530 (7th Cir. 2023) (involving minister in same-sex marriage, contrary to religious defendant's faith). By contrast, people asserting ADA claims against a religious organization often do not implicate the organization's religious doctrine in their claims at all. In such cases,

religious defendants may simply win on the merits or on other bases. *E.g.* *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 174 (4th Cir. 2023) (affirming summary judgment for religious defendant on ADA claim based on normal burden-shifting analysis); *see also Palmer v. Liberty Univ.*, 72 F.4th 52, 61 (4th Cir. 2023) (resolving age-discrimination claim against religious defendant by affirming summary judgment on the merits). For a low-level employee like Appellant Behrend, asserting discrimination that does not implicate any fundamental beliefs of the Zen Center, the ministerial exception does not apply, and an opinion saying that would not endanger the application of the ministerial exception to ministers and leaders in key roles in future cases.

## CONCLUSION

For the foregoing reasons, in addition to those in the Opening Brief, the judgment of the District Court should be reversed.

Respectfully submitted,

 /s/ Jim Davy

Jim Davy
ALL RISE TRIAL & APPELLATE
P.O. Box 15216
Philadelphia, PA 19125
(215) 792-3579
jimdavy@allriselaw.org

Counsel for Appellant

Dec. 8, 2023

16

**CERTIFICATE OF COMPLIANCE**

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this brief:

(i) complies with the type-volume limitation of Rule 32(a)(5) and Ninth Cir. Rule 32-1 because it contains 3,886 words, including footnotes and excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) and Ninth Cir. Rule 32-1 because it has been prepared using Microsoft Office Word 16.66.1, set in Century Schoolbook 14-point type.

/s/ Jim Davy

Jim Davy

## CERTIFICATE OF SERVICE

I certify that on Dec. 8, 2023, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

I further certify that, after receiving notice that the brief has been accepted for filing, I will file 6 paper copies of this brief and 3 paper copies of the accompanying excerpts of records with the Clerk of Court.

<u>/s/ Jim Davy</u>

Jim Davy